## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

ANTHONY REED                                                                                    PETITIONER

v.                                       NO. 5:06CV00291 HDY

LARRY NORRIS, Director of the                                                          RESPONDENT
Arkansas Department of Correction

### MEMORANDUM OPINION AND ORDER

<u>STATE COURT PROCEEDINGS</u>. The record reflects that in November of 2000, petitioner Anthony Reed ("Reed") was convicted by a Jefferson County, Arkansas, Circuit Court jury of one count of aggravated robbery, one count of theft of property, and two counts of second degree battery for his conduct in two separate incidents on the same night in July of 1999. See <u>Reed v. State</u>, 2002 WL 273655 (Ark.App. 2002).[1] He appealed the judgment of conviction to the Arkansas Court of Appeals and maintained that there was insufficient evidence to support his convictions of aggravated robbery and theft of property. Despite his assertion of error, the state Court of Appeals affirmed the judgment of conviction. See <u>Id</u>.

---

[1] As the Court will more fully explain in footnote four, one of the counts of second degree battery was subsequently merged with the one count of aggravated robbery. See Document 5, Exhibit G at 305-306.

In April of 2002, Reed filed a trial court petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In that submission, he challenged the representation afforded by his trial attorney. The trial judge conducted a hearing on the petition and denied it in September of 2003. Reed appealed the denial of his petition to the state Supreme Court. When he failed to file a "complying brief as required by [an order of the state Supreme Court]," his appeal was dismissed and the denial of his petition was affirmed on account of his "noncompliance in accordance with Ark. Sup.Ct. R. 4-2(b)(3)." See Reed v. State, 2006 WL 137232 at 2 (Ark.S.Ct. 2006).

FEDERAL COURT PROCEEDINGS. In November of 2006, Reed filed the pending pro se petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the submission, he advanced the following claims: (1) the trial judge erred in using the same jury to decide criminal offenses arising from two separate incidents; (2) Reed's trial attorney was ineffective when he informed potential jurors of Reed's prior felony convictions; (3) the evidence to support Reed's convictions of aggravated robbery and theft of property was insufficient; and (4) the State failed to disclose exculpatory evidence, and counsel was ineffective when he failed to obtain and offer the evidence. In connection with Reed's third claim, i.e. his challenge to the sufficiency of the evidence supporting his convictions of aggravated robbery and theft of property, he submitted a copy of an affidavit signed by one of the victims, John E. Price ("Price"). See Document 2 at 11. In the affidavit, Price appears to recant the testimony he gave at Reed's trial.

In December of 2006, respondent Larry Norris ("Norris") submitted a response to Reed's petition. Norris first maintained that claims one, two, and four of the petition should be denied because they are procedurally barred from federal court review. With regard to claim three, he maintained that it was correctly decided by the state Court of Appeals. He alternatively maintained that Reed cannot show that the decision of the state Court of Appeals on claim three was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Norris additionally maintained that Reed cannot show that the decision of the state Court of Appeals on that claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. With regard to Price's alleged recantation, Norris maintained that it should be disregarded.[2]

The Court briefly examined the record in this proceeding and determined that Reed should be notified that Norris was seeking the dismissal of the petition because, <u>inter alia</u>, three of the claims contained in it are allegedly procedurally barred from federal court review. The Court so notified Reed and invited him to submit a reply in which he explained why his petition should not be dismissed.

---

[2]

Norris maintained that "[t]o the extent [the] Court views [the affidavit] as a recantation, it should have no bearing on this case." <u>See</u> Document 5 at 6. Norris additionally maintained the following: "Recantations are hardly reliable evidence of innocence. They are viewed with a 'considerable element of skepticism.' [Citation omitted]. Their value is not to establish hard fact, for they can never do that alone. Rather, they possess only impeachment value. The reason is obvious. Inherent in any recantation is the admission that the recanting witness 'either is lying now, was lying then, or lied both times.'" <u>See Id</u>.

Reed accepted the invitation of the Court by submitting a reply. In that submission, he appeared to acknowledge that he had procedurally defaulted claims one, two, and four. He nevertheless maintained that the claims should be considered on the merits because he is not an attorney and because he is actually innocent of the offenses; he specifically maintained the following:

> Petitioner apologizes for being procedurally barred ... and the reason Petitioner asks this Honorable Court to [hear] these violations is because a constitutional violation occurred that convicted a person who was actually innocent of the crime. Petitioner also was given a chance to comply with Ark. Sup. Ct. R. 4-2. Petitioner also wants the Court to notice that Petitioner's legal skills fall below an attorney's. Petitioner humbly asked the Arkansas Supreme Court to hear his grounds. Petitioner just couldn't meet the compliance rule.

See Document 10 at 2. He also maintained that claim three should be considered, and relief granted accordingly, because the decision of the state Court of Appeals was based on an unreasonable determination of the facts in light of the evidence presented.

The Court examined the record in this proceeding and made the following findings and conclusions regarding claims one, two, and four. First, Reed never raised claims one and four in state court and thus procedurally defaulted the claims. Second, although he raised claim two in his trial court petition for post-conviction relief, he failed to obtain an appellate court ruling on the claim. The Court therefore concluded that he had procedurally defaulted that claim as well.

-4-

Having found that Reed procedurally defaulted claims one, two, and four, the question was whether he could show cause for the procedural defaults. Although he maintained that his legal skills are inadequate, it was clear that a prisoner's pro se status and limited education do not constitute sufficient cause to excuse a procedural default. Thus, the Court found that his assertion did not excuse his procedural defaults.

Reed additionally maintained that he is actually innocent of the offenses and offered Price's affidavit in support of that assertion. The Court again examined the record in this proceeding and assumed without deciding that in light of the representations contained in Price's affidavit, Reed had satisfied the "actual innocence" standard of Schlup v. Delo, 513 U.S. 298 (1995).[3] Specifically, the Court assumed without deciding that on the basis of Price's representations, it is more likely than not that no reasonable juror would have found Reed guilty of aggravated robbery and theft of property beyond a reasonable doubt. Given the foregoing assumption, he was permitted to pass through the Schlup v. Delo "gateway." The Court ordered Norris to submit an amended response in which he addressed claims one, two, and four on the merits and, if desired, to supplement his response to claim three.

---

[3]

In Schlup v. Delo, the United States Supreme Court recognized that a showing of actual innocence can serve as a "gateway" through which a petitioner can obtain review of otherwise procedurally defaulted claims. Schlup v. Delo holds that a prisoner asserting actual innocence as a "gateway" to defaulted claims must establish that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" See House v. Bell, — U.S. —, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) [quoting Schlup v. Delo, 513 U.S. at 327].

Norris thereafter submitted an amended response to Reed's petition. Norris correctly noted at the outset of his response that "[the] Court did not explicitly rule on whether [Reed] had made [an actual innocence] showing ..." See Document 13 at 2. Norris again maintained that claims one, two, and four were procedurally barred from federal court review because Reed had procedurally defaulted the claims and could show neither cause for the procedural defaults nor actual innocence. Norris alternatively addressed claims one, two, and four on the merits. In sum, he maintained that Reed was not entitled to relief on those claims.

The Court has now had an opportunity to thoroughly examine the parties' submissions. For the reasons that follow, the Court finds that Reed's petition should be denied and dismissed and judgment entered for Norris.

PROCEDURAL BAR AND ACTUAL INNOCENCE. The Court previously found that Reed procedurally defaulted claims one, two, and four, and he cannot show cause for his procedural defaults. As the Court noted above, a showing of actual innocence, though not true cause for a procedural default, can serve as a "gateway" through which a petitioner can obtain federal court review of an otherwise procedurally defaulted claim. As Norris correctly noted in his amended response, the Court did not explicitly rule on whether Reed made a showing of actual innocence; instead, the Court simply assumed that he had. On further review, the Court finds that he has not made a showing of actual innocence.

On the night of July 24, 1999, and into the morning hours of July 25, 1999, Reed, Sylvester Brown ("Brown"), Price and several females were at Reed's house. At some point during the night, Brown struck Price with a baseball bat. Brown, accompanied by Reed, thereafter took Price's truck without his permission. Reed was subsequently tried as "an accomplice with respect to the offenses of aggravated robbery and theft of property committed against ... Price." See Reed v. State, 2002 WL 273655 at 1.[4] At trial, Price did not specifically testify that he was beaten and/or robbed by Reed. When asked what Reed did during the incident, Price testified that Reed "just intimidated me, bullied me." See Document 5, Exhibit G at 166. When asked how Reed did that, Price testified that, "Well, he was present with the other guy [i.e., Brown]. He was all in the house and I just had fear, ... He was present with them." See Id. Price was again asked how he was intimidated and bullied by Reed; Price testified that, "Maybe [Reed] push[ed] me and just-you know, put-tried to put fear in me basically." See Id. at 167. On the strength of Price's testimony, Reed was convicted of the two offenses.

---

[4] Reed's criminal prosecution sprang from two separate incidents that occurred on the same night in July of 1999. One incident involved Mr. Richard Fowler ("Fowler"), and Reed was charged with second degree battery and of being a felon in possession of a firearm for his conduct in that incident. The jury convicted Reed of second degree battery for the Fowler incident but acquitted Reed of being a felon in possession of a firearm for the Fowler incident. The other incident involved Price, and Reed was charged with second degree battery, aggravated robbery, and theft of property for his conduct in that incident. The jury convicted Reed of second degree battery, aggravated robbery, and theft of property for the Price incident. The second degree battery offense in the Price incident was subsequently merged with the aggravated robbery offense in the Price incident. See Document 5, Exhibit G at 305-306. As best the Court can tell, Reed has never challenged his criminal liability for the Fowler incident. Reed's sole challenge has been to his convictions for aggravated robbery and theft of property in the Price incident.

On direct appeal, the state Court of Appeals was called upon to address the evidence supporting Reed's convictions. The state Court of Appeals found as follows:

> … [Price], a disabled Vietnam veteran, was driving in his truck when he was flagged down by [Brown]. Price picked Brown up, and they drove to [Reed's] residence where Brown was also staying. … Price testified that [Reed] was there when they arrived, as well as [Reed's] and Brown's girlfriends. Price said that he stayed there with them all afternoon and into the evening hours and that he allowed [Reed] and Brown to borrow his truck a couple of times during the course of his visit. Price testified that all was well until one of the women complained that he was talking too much. At that point, Brown brandished a bloody baseball bat and said that he had just beaten another man and that he would beat Price, too, if he did not act right. Price said that Brown wiped blood from the bat onto his tennis shoe and hit him with the bat. Price said that Brown also told him that he was going to keep Price's truck, that Brown refused to return the keys, and that Brown and [Reed] left in the truck for a while. Price further testified that he was held captive and beaten by Brown and the women throughout the night. He said that [Reed] did not beat him, but that [Reed] did push him, bully, intimidate, and "put fear in" him. Price said that he managed to escape the next day by running out of the house and jumping into a vehicle of an acquaintance. Price's truck was found damaged several days later.
>
> …
>
> A person commits aggravated robbery if he commits robbery and is armed with a deadly weapon or represents by word or conduct that he is so armed. … A person commits the offense of robbery if, with the purpose of committing a felony or misdemeanor theft, he employs or threatens to immediately employ physical force upon another. … "Physical force" means any bodily impact, restraint, or confinement or threat thereof. …
>
> A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of that property. …

> A defendant may be found guilty not only of his own conduct, but also the conduct of his accomplice. ... An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense, aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. ... The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation are relevant factors in determining the connection of an accomplice with the crime. ... When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. A participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. ...
>
> ...
>
> ... [T]he evidence shows that ... Price was held captive, beaten, and robbed of his truck. These events took place at [Reed's] own home. Although [Reed] did not take part in every wrongful act, there was evidence that [Reed] pushed, threatened, and bullied ... Price during the ordeal and that [Reed] rode in the stolen truck with [Brown]. Moreover, there was evidence that, when the police came to his house, [Reed] attempted to flee out of the back door. Evidence of flight to avoid arrest may be considered by the jury as being corroborative of guilt. ... We think the jury could find that [Reed's] level of participation went beyond merely being present while the crimes were committed. ...

See Reed v. State, 2002 WL 273655 at 1-2.

In March of 2003, Price signed an affidavit containing the following representations:

> [Reed] did not do any bodily harm to me. [Reed] had nothing to do with the incident that [happened] to me. He did not rob me or [steal] any of my property. ... [Reed] was not the one that did it. It was [Brown]. I do so swear that ... Reed was not the cause of this problem.

-9-

See Document 2 at 11. The Court accepts that the representations contained in the affidavit are Price's and that he signed the affidavit.

Reed's assertion of actual innocence is built entirely upon the representations contained in Price's affidavit. At first blush, it appears from the affidavit that Price has recanted his trial testimony and undercut the basis for Reed's convictions of aggravated robbery and theft of property. Upon closer examination, though, and for the reasons that follow, the Court finds that Price has not truly recanted the substance of his trial testimony. Thus, it cannot be said that Reed has satisfied the Schlup v. Delo standard.

At the outset, the Court notes that although recanted testimony can warrant relief, Price's affidavit is viewed with great suspicion. Price signed his affidavit almost four years ago between the time Reed filed his trial court petition for post-conviction relief and the time the trial judge denied the petition. The Court has no idea when Reed obtained the affidavit. The record is silent as to whether Reed, once he obtained the affidavit, ever submitted it to the state courts of Arkansas. This proceeding appears to be the first one in which the affidavit was ever submitted for judicial consideration. His failure to present the affidavit to the state courts of Arkansas is akin to a procedural default and would justify the Court in disregarding the affidavit. The Court will nevertheless consider the affidavit because of the confusion regarding whether he ever submitted it to the state courts of Arkansas and, as the Court will explain, the representations contained in the affidavit do not warrant relief.

Turning to the representations contained in the affidavit, the Court is not convinced that Price has truly recanted his trial testimony. First, Price represents in his affidavit that Reed "did not do any bodily harm to [Price]." See Document 2 at 11. That representation is consistent with Price's trial testimony. Price never testified that he was beaten or struck by Reed. Price testified that he was intimidated and/or bullied by Reed. It is true that the record contains a reference to Reed possibly pushing Price, but Price is not at all clear whether that actually happened. See Document 5, Exhibit G at 167 ("[m]aybe [Reed] push[ed] me …").

Second, Price represents that Reed did not have anything to do with the attack and did not rob or steal from Price. That representation is also consistent with Price's trial testimony. Price never testified that he was beaten or struck by Reed nor did Price testify that Reed robbed him or stole the truck. Price testified, and the state Court of Appeals found, that Brown was the one who beat Price and that it was Brown who took the truck; Reed simply intimidated and/or bullied Price and left with Brown when the truck was taken.

Third, Price represents that Reed was "not the one [who] did it. It was Poops, … Brown. I do swear that … Reed was not the cause of this problem." See Document 2 at 11. Again, that representation is consistent with Price's trial testimony. The record is quite clear: Brown was the "cause" of "this problem" in that he was the one who beat Price and took his truck. Reed was simply an accomplice.

For these reasons, the Court finds that Price has not truly recanted his trial testimony. The representations contained in his affidavit are not new evidence because they are not truly at odds with his trial testimony. In light of the fact that the representations contained in the affidavit are not new evidence, it is unnecessary for the Court to consider whether it is "more likely than not that ... no reasonable juror would find [Reed] guilty beyond a reasonable doubt ..." See House v. Bell, 126 S.Ct. at 2077. Reed has failed to make a showing of actual innocence and has therefore failed to satisfy the Schlup v. Delo standard which, if satisfied, would permit consideration of the otherwise procedurally defaulted claims. Having failed to satisfy that standard, claims one, two, and four are procedurally barred from federal court review.[5]

---

5

Were the Court to consider the claims, it is clear that Reed would not be entitled to relief. With regard to claim one, i.e., his claim that the trial judge erred in using the same jury to decide criminal offenses arising from two separate incidents, Reed cannot show that the trial judge's failure to sever the offenses rendered the trial fundamental unfair. See Wharton-El v. Nix, 38 F.3d 372 (8th Cir. 1994). It is possible to characterize the Fowler incident and the Price incident as involving a common scheme, plan, or occurrence.

With regard to claim two, i.e., Reed's claim that his trial attorney was ineffective when he informed potential jurors of Reed's prior felony conviction, he cannot show that counsel's decision to so inform the jury was error, prejudicial or otherwise. The Court is satisfied that counsel's decision was a strategic one, particularly since the trial judge told the prospective jurors at the outset of voir dire that Reed was charged with, inter alia, being a felon in possession of a firearm. See Document 5, Exhibit G at 72. Moreover, the Court credits counsel's testimony on that issue during the hearing conducted on Reed's petition for post-conviction relief. See Document 13, Exhibit I at 94-96.

With regard to claim four, i.e., Reed's claim that the State failed to disclose exculpatory evidence, specifically, a statement by a co-defendant, and that counsel was ineffective when he failed to obtain and offer the evidence, Reed can show no error. First, it is clear that Reed knew of the statement prior to trial. See Document 5, Exhibit G at 65-67. Second, the Court credits counsel's explanation for not introducing the statement. See Document 13, Exhibit I at 97-99.

CLAIM THREE. Reed maintains that the evidence to support his convictions for aggravated robbery and theft of property was insufficient. This claim is properly before the Court; the only inquiry for the Court involves the application of 28 U.S.C. 2254(d).

28 U.S.C. 2254(d) provides that a petition shall not be granted with regard to any claim that was adjudicated on the merits by the state courts unless the adjudication--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Did the adjudication of this claim by the state Court of Appeals result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law? The Court thinks not. The state appellate court admittedly did not cite Jackson v. Virginia, 443 U.S. 307 (1979), but "[a] reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases-indeed, it does not even require *awareness* of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005). [Citations omitted; Emphasis in original]. The state appellate court applied the teachings of Jackson v. Virginia and did so in an objectively reasonable manner; neither the reasoning nor the result contradicts Jackson v. Virginia.

Reed has also not shown that the adjudication of the claim by the state Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The state appellate court found the following with regard to the evidence:

> Although [Reed] did not take part in every wrongful act, there was evidence that [Reed] pushed, threatened, and bullied … Price during the ordeal and that [Reed] rode in the stolen truck with [Brown]. Moreover, there was evidence that, when the police came to his house, [Reed] attempted to flee out of the back door. Evidence of flight to avoid arrest may be considered by the jury as being corroborative of guilt. … We think the jury could find that [Reed's] level of participation went beyond merely being present while the crimes were committed. …

See Reed v. State, 2002 WL 273655 at 2. Thus, the state appellate court could find the evidence sufficient to support his convictions of aggravated robbery and theft of property for the Price incident.

Admittedly, the resolution of this proceeding is made more difficult by the presence of Price's affidavit. Reed relies heavily upon the representations contained in the affidavit in maintaining that the evidence to support his convictions of aggravated robbery and theft of property for the Price incident is insufficient. As the Court noted above, but will not repeat here, Price has not truly recanted his trial testimony. The representations contained in his affidavit are not new evidence because they are not truly at odds with his trial testimony.

Given the foregoing, the undersigned finds that Reed cannot overcome the barrier posed by 28 U.S.C. 2254(d). His claim that the evidence supporting his convictions of aggravated robbery and theft of property for the Price incident is therefore denied and dismissed.

CONCLUSION. On the basis of the foregoing, the Court finds that Reed's petition is denied and dismissed. Claims one, two, and four of his petition are procedurally barred from federal court review, and Reed cannot overcome the barrier posed by 28 U.S.C. 2254(d) with regard to claim three. Judgment will be entered for Norris.

IT IS SO ORDERED this __24__ day of April, 2007.

*H. Daniel Young*

_____
UNITED STATES MAGISTRATE JUDGE